Joseph D. Martinec
State Bar No. 13137500
**MARTINEC, WINN & VICKERS, P.C.**
611 S. Congress Avenue, Suite 450
Austin, TX 78704-1771
(512) 476-0750/FAX (512) 476-0753
martinec@mwvmlaw.com
ATTORNEYS FOR NYLE MAXWELL OF TAYLOR, LLC

Joe L. Lovell, State Bar No. 12609100
joe@lovell-law.net
Matthew Merriott, State Bar No. 24100846
matthew@lovell-law.net
**LOVELL, LOVELL, ISERN & FARABOUGH, L.L.P.**
112 West 8th Avenue, Suite 1000
Amarillo, TX 79101-2314
(806) 373-1515/FAX: (806) 379-7176
LOCAL COUNSEL FOR NYLE MAXWELL OF TAYLOR, LLC

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF TEXAS
## LUBBOCK DIVISION

| | | |
|---|---|---|
| IN RE: | § | Chapter 11 |
| REAGOR-DYKES MOTORS, LP, et al. | § | Case No. 18-50214-rlj |
| Debtors. | § | (Jointly Administered) |
| NYLE MAXWELL OF TAYLOR, LLC, | § | |
| Plaintiff, | § | |
| v. | § | |
| REAGOR AUTO MALL, LTD., | § | ADVERSARY NO. 18-5007-rlj |
| FIRSTCAPITAL BANK OF TEXAS, N.A., | § | |
| MUSA AUTO LEASING, MUSA AUTO | § | |
| FINANCE, LLC, | § | |
| Defendants. | § | |

### PLAINTIFF'S RESPONSE TO DEFENDANTS MUSA AUTO LEASING AND MUSA AUTO FINANCE, LLC'S MOTION TO WITHDRAW THE REFERENCE) AND CONSOLIDATED BRIEF IN SUPPORT

Comes now Nyle Maxwell of Taylor, LLC, Plaintiff in the above-styled and numbered cause, and in response to the *Defendants MUSA Auto Leasing and MUSA Auto Finance, LLC'S* ("MUSA") *Motion to Withdraw the Reference* (Doc. No. 16) (the "Motion to Withdraw Reference") and *Consolidated Brief in Support of Defendants MUSA Auto Leasing and MUSA Auto Finance, LLC'S Motion to Withdraw the Reference & Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6)* (Doc. No. 18) (the "Consolidated Brief") would show the court the following:

### MOTION TO DISMISS MUSA'S MOTION TO WITHDRAW REFERENCE

The Motion to Withdraw Reference (the "Motion") does not comply with FED. R. CIV. P. 10(b) as incorporated by FED. R. BANKR. P. 7010. The Motion states no factual basis for the

requested relief. The Motion is no more than a caption and a prayer with no incorporation of or reference to MUSA's multifarious pleading in the form of its Consolidated Brief. The Motion creates confusion and creates an improper burden on Plaintiff to respond to the Motion.

MUSA should be required to replead the Motion to Withdraw Reference consistent with the requirements of FED. R. CIV. P. 10(b) and FED. R. BANKR. P. 7010.

## <u>RESPONSE TO MOTION TO WITHDRAW REFERENCE</u>

Plaintiff objects to the <u>Chart of Transactions at Issue in this Case</u> that was created by MUSA (Page 2 of the Consolidated Brief). There is neither explanation nor justification for the schematic depicted by MUSA. Except for MUSA's virtual admission that it prevails <u>only</u> if the transactions are consignment sales, the transactions described in the Amended Complaint are not consignment transactions. Consideration for sale of the vehicles was payment of the purchase price by RAM. Many of the underlying "facts" are disputed and there appear to be no documents which support MUSA's fanciful description of the transactions. The Affidavit of Melinda Wolf, Chief Financial Officer of NMOT, attached hereto as Exhibit B, however, lays bare the inaccuracy of MUSA's description of the transactions.

<u>CB No. 1</u>.[1]    Denied. NMOT seeks a determination of the ownership of the vehicles identified in the Amended Complaint to Determine Rescission of Agreement, Property of the Estate, Conversion, Validity and Extent of Lien, and for Accounting and Disgorgement (Doc 11) (the "Amended Complaint"). Additionally, FirstCapital Bank, another defendant, claims to have a valid lien on property which the Reagor entity admits to having taken possession. The bankruptcy court, because of the order of reference, has exclusive jurisdiction over property of the bankruptcy estate. 28 U.S.C. § 1334(e). Reagor Auto Mall ("RAM" or "Debtor"), belatedly seeking Chapter 11 protection, was not just gratuitously named a defendant. RAM was the instigator of the scheme entangling MUSA and FirstCapital Bank[2]. The state court lawsuit

---

[1]    Plaintiff will attempt to respond to the Motion to Withdraw Reference by responses to specific paragraphs of the Consolidated Brief ("CB No. __") because there are no numbered paragraphs in the Motion to Withdraw Reference.

[2]    Non-statutory insider.

alluded to by MUSA is stayed by § 362. If the stay is lifted, it is likely that the litigation would be removed to the bankruptcy court because of the § 1334(e) issue and because there are three pending adversaries[3] based on very similar fact issues. The other defendants have consented to entry of final orders by this court. MUSA favors having this court render judgment in the two related adversaries but having the district court hear its case. Withdrawing the reference will only serve to increase duplication for multiple courts and create the risk of inconsistent outcomes. A withdrawal of the reference would be inequitable, increase litigation costs and damage efficiencies for all affected parties. MUSA's "impending demand for a jury trial" does not militate in favor of withdrawal because (1) it is not obvious that MUSA has a jury trial right to invoke, and (2) even if there is a jury trial right, the district court can allow all preliminary matters to be heard by the bankruptcy court.

CB No. 3. Denied that MUSA accurately alleged the "relevant facts".[4] MUSA's mischaracterization of the transactions as consignment sales is intended to eliminate NMOT's right of rescission based on total failure of consideration. However, as set forth in the Wolf

---

[3] *Nyle Maxwell of Taylor, LLC v. Reagor-Dykes Imports, LP, Reagor Auto Mall, Ltd., FirstCapital Bank of Texas, N.A. and USB Leasing LT,* Adversary No. 18-5006-rlj, Northern District of Texas, Lubbock, Division *Nyle Maxwell of Taylor, LLC v. Reagor-Dykes Imports, LP, Reagor Auto Mall, Ltd., and FirstCapital Bank of Texas, N.A.*, Adversary No. 19-5002-rlj, Northern District of Texas, Lubbock, Division, and this adversary. No other party seeks withdrawal of the reference.

[4] In analyzing the effect of total failure of consideration on a contract, Judge Jeff Bohm cited the prevailing authority under Texas law in *Quinlan v. AFI Services, LLC (In re AFI Services, LLC),*, 486 BR 827 (Bankr. S.D. Tex. 2013). Under Texas law total failure of consideration is a basis for rescission of the contract, citing *Food Machinery Corp. v. Moon,* 165 S.W.2d 773 (Tex. Civ. App.-Amarillo 1942). See also *Matter of Topco, Inc.* 894 F.2d 727, 742 (5th Cir. 1990). Total failure of consideration causes rescission of the contract. *Parsley v. Rowley*, 1992 WL 45791 (Tex. Civ. App.-Houston [14th Dist.] Mar. 12, 1992), citing and interpreting *Food Machinery Corp. v. Moon*, supra.

If the contracts are rescinded, the subject vehicles are not property of the bankruptcy estate[4]. "…the estate does not receive more rights than those that the debtor has in property as of the commencement of the case—in other words, if a debtor's interest in property is limited at the time of filing, the estate's right in the property is also so limited, *e.g., In re Dolphin Titan Int'l, Inc.,* 93 B.R. 508, 512 (Bankr. S.D. Tex. 1988) (citing *Bank of Marin v. England,* 385 U.S. 99, 87 S.Ct. 274, 17 L.Ed.2d 197 (1966)); *N.S. Garrott & Sons v. Union Planters National Bank of Memphis (In re N.S. Garrott & Sons),* 772 F.2d 462, 466 (8th Cir. 1985); 5–541 Collier on Bankruptcy § 541.03. The nature and extent of a debtor's interest in property is determined by reference to applicable state law—here, the laws of the State of Texas. *Butner v. United States,* 440 U.S. 48, 55, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979)." *Quinlan v. AFI Services, LLC (In re AFI Services, LLC),* supra at 835.

Affidavit, MUSA has no good faith basis for alleging that the subject transactions were consignment sales.

CB No. 4.    Denied.    MUSA mischaracterizes the sequence of events that occurs related to the subject vehicles.  RAM's purported purchases of the NMOT vehicles described in the Amended Complaint appear to have occurred contemporaneously with or after the lease transactions.  Each MUSA lease appears to have been created contemporaneously with, but certainly before, the completion of NMOT's sale to RAM.  See Exhibit A which identifies the vehicle "sale date" and the vehicle "lease date."  RAM was transferring vehicles and assigning leases to MUSA before the NMOT/RAM sale was completed. On information and belief, RAM had an agreement with MUSA before RAM contacted NMOT.

CB No. 5.    Denied that RAM paid any amount to NMOT for the vehicles identified in the Amended Complaint.  On information and belief, RAM was experiencing financial difficulty long before the Chapter 11 filing by related Reagor-Dykes Debtors on August 1, 2018. It is not currently ascertainable what sums MUSA may have paid the Debtor-Defendant, but there is no valid basis for contending that RAM or MUSA paid any portion of the consideration for purchase of the NMOT vehicles.

CB No. 6.    The Chapter 11 filing of the initial group of Reagor-Dykes Debtors created confusion as to whether or not RAM was a debtor entity.  The Reagor-Dykes Companies used multiple, confusing  assumed names.[5]  Unknown to most[6] the same attorneys then representing the Debtor entities were very quietly also representing RAM outside of bankruptcy, presumably so more cash could be squeezed out of RAM for the benefit of the Reagor debtor entities.

---

[5]    Reagor Auto Mall used Prime Capital Auto Lease as an assumed name, but was not included in the initial Chapter 11 filing.  Chapter 11 Debtor entities meanwhile used Reagor-Dykes Auto Mall of Midland, Prime Capital Lease–Midland and Prime Capital Auto Lease-Midland as assumed names, all protected by the automatic stay. At the time of the initial filing, RAM was represented by the same law-firm representing the Debtor entities–an undisclosed fact.

[6]    On information and belief, FirstCapital Bank, a RAM lender, and other related entities were aware of the RAM financial condition before other creditors, Plaintiff or the general public.

CB No. 7.      Denied.  NMOT does not allege that MUSA paid RAM  There has not yet been any discovery, and NMOT has not had access to any RAM or MUSA records.

CB No. 8.      Denied.  The state court litigation was filed only after NMOT was able to determine that RAM was not then a Debtor entity.  That litigation was then stayed by RAM's inevitable Chapter 11 filing.  The State Court Case never had a chance to advance beyond the initial filing.  FirstCapital Bank of Texas, N.A. ("FCB") has asserted liens on some of the same vehicles listed in the Amended Complaint.  The records of MUSA, RAM and FCB with regard to these vehicles have not been made available to NMOT.  FCB has been involved in a number of transactions that appear intended to improve FCB's collateral position.  On information and belief, because of the close relationship or insider information available to FCB.  MUSA has done nothing to distance its RAM transactions from FCB's.

CB No. 9.      Denied that MUSA was authorized to unilaterally fail to abide by the provisions of FED. R. BANKR. P. 7010 and FED. R. CIV. P. 10(b).

CB No. 10 – 16.      NMOT is in agreement that the Fifth Circuit which, in response to the jurisdictional issues raised in *Marathon*[7] case and others cited by MUSA, has established a test for determining whether or not a motion to withdraw reference should be granted, and if so, on what terms.

> "The Bankruptcy Amendments Act has attempted a flexible response to *Marathon*, permitting bankruptcy courts to hear "core" proceedings by blanket reference from the district courts, while authorizing them to function much like magistrates as adjuncts to the district court on matters that are merely "related to" a bankruptcy.  *Marathon* provides the outer boundary of original referred jurisdiction of bankruptcy courts, but considerations of judicial economy also bear on the decision to withdraw the reference or refer to bankruptcy court.  The district court should consider the goals of promoting uniformity in bankruptcy administration, reducing forum shopping and confusion, fostering the economical use of the debtors' and creditors' resources, and expediting the bankruptcy process."  *Holland America Insurance Company v. Succession of Roy*, 777 F.2d 992 (5th Cir. 1985).

---

[7]      458 U.S. 50 (1982)

It is important to note that MUSA is the holder of scheduled claims in the Debtor-Defendants' Chapter 11, and has filed proofs of claim in the RDI and RAM cases. As such, MUSA has submitted itself to the equitable power of the bankruptcy court to adjustment of its claim. MUSA has alleged no legal basis for its asserted right to trial by jury. *Granfinanciera v Nordberg*, 492 U.S. 33, 59 (1986). The equitable adjustment of the Defendant's claim is a public right recognized by the U. S. Supreme Court in *Granfinanciera,* above, and in *Stern v. Marshall,* 564 U.S. 462 (2011).

Even if MUSA could otherwise assert a right to a jury trial, its requested relief is inappropriate. NMOT does not accept the analysis offered by MUSA. MUSA's proposed creation of separate processes for determination of the similar, if not identical, claims asserted in Adversary Nos. 18-5006 and 19-5002 unnecessarily creates a duplicative process that is the antithesis of an orderly administration of the bankruptcy estate. Defendant proposes that the process be taken from the judge that has handled this group of administratively consolidated since August 8, 2018, and dropped into the lap of a district court with no prior involvement in the case. Even if the defendant can successfully assert a right to jury trial, there is no reason to separate the preliminary matters in the case from the judge handling many similar adversaries pending in the same case.

> "Withdrawal of a reference is not intended to be an escape hatch from bankruptcy to district court." *In re HA 2003, Inc., 2004 U.S. Dist. LEXIS 4674, No. 03 C 9008, 2004 WL 609799, at \*2 (N.D. Ill. Mar. 24, 2004)* (quotation omitted). Thus, withdrawal "is the exception, **[\*5]** not the rule." *Id.* "The Court has broad discretion in determining whether to grant or deny a motion [for permissive] withdrawal." *In re Edgewater Med. Ctr., 2004 U.S. Dist. LEXIS 25346, Nos. 04 C 3579 & 04 C 2330, 2004 WL 2921957, at \*2 (N.D. Ill. Dec. 15, 2004).* Among the factors to be considered in determining whether cause exists for permissive withdrawal are "judicial economy, convenience, . . . the particular court's knowledge of the facts, . . . . promoting the uniformity and efficiency of bankruptcy administration, reduction of forum shopping and confusion, conservation of debtor and creditor resources, and whether the parties requested a jury trial." *In re Sevko, 143 B.R. 114, 117 (Bankr. N.D. Ill. 1992).* The most important factor, however, is whether a proceeding is core or non-core, as efficiency, uniformity and judicial economy concerns are largely subsumed within

it. *In re Conseco, 324 B.R. at 53*." *CDX Liquidating Trust v. Venrock Assocs.* 2005 U.S. Dist. LEXIS 16704, pg. 4 (N.D. Ill. Aug. 10, 2005)

It is often the case that the filing of a motion for withdrawal of the reference is intended to be burdensome to the plaintiff; it is rarely filed because a federal district court jury trial is more beneficial to the defendant. Even if the jury trial right exists, it doesn't require an explanation for its exercise. Nonetheless, the bankruptcy court and district court can fashion an efficient process that divides the appropriate and efficient control of the litigation between the two courts. As noted by MUSA, the court can, in its discretion, withdraw the reference partially or entirely. It is strange then for MUSA to suggest that this one case be entirely extracted from the existing bankruptcy, while invoking judicial economy.

CB No. 17. Denied. MUSA mischaracterizes the facts of the adversary. Central to a resolution of the adversary is the determination of whether or not the subject vehicles are property of the estate and whether or not valid liens were placed on those vehicles if shown to be property of the estate.. See 28 U.S.C. 1334(e). That some of the vehicles and leases were omitted from RAM's schedules is probative of nothing. The schedules in this case were prepared by a CRO with little, if any, knowledge of the facts, accompanied by extensive disclaimers regarding the accuracy of the Schedules and Statement of Financial Affairs.[8]

CB No. 18. Denied. There has been no opportunity for discovery and because of the condition of RAM's records, the Debtor has been unable to provide records of the subject transactions to the parties. The location of the vehicles does not appear to be available, and NMOT contends that its ownership of the vehicles is inextricably interconnected with RAM's (and FCB's) conduct during the avoidance period.

CB No. 19. Denied. MUSA's argument is undermined by the realities of the administratively consolidated Chapter 11s. Any chance of consistent results in the multiple

---

[8] In its Answer to the Amended Complaint (Paragraph 20) Debtor acknowledged that RAM had taken possession of the vehicles.

adversaries and related motion practice will be eliminated if the MUSA adversary alone is tried by the district court.[9]

CB No. 20.      Denied.   MUSA's intent to make a jury demand does not meet the requirements set forth in *Granfinanciera* and *Stern*, cited above.   However, even if MUSA is entitled to a jury trial, the district court can fashion a process that allows the bankruptcy court to hear preliminary matters and make recommendations to the district court.

CB No. 21.      MUSA and other similar leasing companies have invoked the notion that they have protected consumers who have become trapped in the leases.   It is apparent that MUSA did nothing to protect the lessees under leases created by RAM and MUSA, not having bothered to determine the title status of the leased vehicle before placing it in the hands of a lessee.   That information was readily available to MUSA.   MUSA must have known the risk of subjecting its customers to unnecessary risk by forcing execution of a lease on the same day as the sale transaction that failed to be completed. Obviously, the lessees assumed that neither RAM nor MUSA would lease them a car without having ownership of the car.

CB No. 22.      Denied.   None of the stated factors weigh in favor of removal of the reference.

CB No. 23.      Denied.  The adversary also affects the creditors of RAM.[10]

CB No. 39.      Denied.  MUSA has failed to provide a justification of withdrawal of the reference, but if the reference is withdrawn, the bankruptcy court should be enlisted to hear preliminary matters and make recommendations to the District Court.

Wherefore, Premises Considered, Plaintiff requests that the Motion to Withdraw Reference be denied, and for such other and further relief as to which the Plaintiff may show itself to be entitled.

---

[9]      This court has already been in charge of the eleven (11) administratively consolidated cases, and the docket sheet for the administratively consolidated cases has in excess of 1135 entries.

[10]     MUSA filed Proof of Claim No. 57 (Reagor Auto Mall, Ltd, Case No. 18-50324) on March 28, 2019; Proof of Claim No. 113 (Reagor-Dykes Motors, LP, Case No. 18-50214) on December 5, 2018, and Proof of Claim No. 53 (Reagor-Dykes Imports, LP, Case No. 18-50215) on December 5, 2018.

Respectfully submitted,

MARTINEC, WINN & VICKERS, P.C.
611 S. Congress Avenue, Suite 450
Austin, TX 78704-1771
(512) 476-0750/FAX (512) 476-0753
martinec@mwvmlaw.com

By: _____

Joseph D. Martinec
State Bar No. 13137500
ATTORNEYS FOR NYLE MAXWELL OF TAYLOR, LLC

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Response to MUSA's Motion to Withdraw Reference has been forwarded electronically (Via ECF or Email) or via regular mail in accordance with the Federal Rules of Civil Procedure as indicated below on this 3rd day of April, 2019.

Marcus Alan Helt
Thomas C. Scannell
Steven C. Lockhart
Foley & Lardner LLP
2021 McKinney Ave., Ste. 1600
Dallas, TX 75201
Attorneys for Debtors
(Via ECF)

Alan B. Padfield
Jeffrey Leaverton
Matthew B. Fronda
PADFIELD & STOUT, LLP
421 W. Third Street, Suite 910
Fort Worth, TX 76102
Attorneys for MUSA Leasing and MUSA Auto Finance, LLC
(Via ECF)

John Massouh
Sprouse Shrader Smith PLLC
701 S. Taylor, Suite 500
P.O. Box 15008
Amarillo, TX 79105-5008
Attorneys for FirstCapital Bank of Texas, N.A.
(Via ECF)

_____
Joseph D. Martinec

Nyle Maxwell of Taylor, LLC          **Leased Vehicles**

| NAME | VIN | SALE DATE | LEASE EXECUTED DATE | PICK UP DATE | LESSOR |
|------|-----|-----------|---------------------|--------------|--------|
| SETH DOEGE | JC440770 | 7/11/2018 | 7/11/2018 | 7/17/2018 | MUSA |
| GENEVIEVE DORN | JC392091 | 7/3/2018 | 7/3/2018 | 7/17/2018 | MUSA |
| KYLAR ESCHENBACHER | JS135994 | 6/19/2018 | 6/19/2018 | 6/21/2018 | MUSA |
| DAKOTA GRIFFITH | JG290717 | 7/16/2018 | 7/16/2018 | 7/18/2018 | MUSA |
| DUSTY REID | JC316840 | 5/19/2018 | 5/19/2018 | 5/19/2018 | MUSA |
|  |  |  |  |  |  |
| Title Transferred |  |  |  |  |  |

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF TEXAS
## LUBBOCK DIVISION

| | | |
|---|---|---|
| IN RE: | § | Chapter 11 |
| REAGOR-DYKES MOTORS, LP, et al. | § | Case No. 18-50214-rlj |
| Debtors. | § | (Jointly Administered) |
| NYLE MAXWELL OF TAYLOR, LLC, | § | |
| Plaintiff, | § | |
| v. | § | |
| REAGOR AUTO MALL, LTD., | § | ADVERSARY NO. 18-5007-rlj |
| FIRSTCAPITAL BANK OF TEXAS, N.A., | § | |
| MUSA AUTO LEASING, MUSA AUTO | § | |
| FINANCE, LLC, | § | |
| Defendants. | § | |

**AFFIDAVIT IN SUPPORT OF PLAINTIFF'S RESPONSE TO DEFENDANTS MUSA
AUTO LEASING AND MUSA AUTO FINANCE, LLC'S MOTION TO WITHDRAW
THE REFERENCE) AND CONSOLIDATED BRIEF IN SUPPORT
AND
PLAINTIFF'S RESPONSE TO DEFENDANTS MUSA AUTO LEASING AND MUSA
AUTO FINANCE, LLC'S MOTION TO DISMISS PURSUANT TO FED. R. CIV. P.
12(b)(6) (SUBJECT TO ITS MOTION TO WITHDRAW THE REFERENCE) AND
CONSOLIDATED BRIEF IN SUPPORT**

| | |
|---|---|
| STATE OF TEXAS | ) |
| | ) |
| COUNTY OF WILLIAMSON | ) |

BEFORE ME, the undersigned authority, on this day personally appeared Melinda Wolf, known to me to be the person whose name is subscribed below, and after being duly sworn by me, stated on oath as follows:

1.      "My name is Melinda Wolf.  I am the Chief Financial Officer of Nyle Maxwell of Taylor, LLC ("NMOT"), Plaintiff.  I am over the age of eighteen, I am fully competent to make this affidavit, and I have personal knowledge of the facts stated herein.

2.      For each transaction initiated by Reagor Auto Mall, Ltd.(RAM) and/or Reagor-Dykes Imports, LP (collectively "Reagor") NMOT required all documentation up front to complete the titling of the vehicle in the name of the ultimate lessor (MUSA or USB Leasing), as well as a bank draft drawn on a Reagor bank account for payment of the vehicle.  NMOT's

EXHIBIT

B

vehicles were not delivered to Reagor until all requirements were satisfied. The "consignment" transaction described by MUSA would violate Texas law.

3.    NMOT holds a "Franchise License" issued by the State of Texas pursuant to the Texas Occupations Code. NMOT is licensed to sell New Chrysler, Dodge, Jeep and Ram vehicles. Title 14, Section 2301.002, of the OCC Code defines a Franchised Dealer as follows:

(15)    "Franchise" means one or more contracts between a franchised dealer as franchisee and a manufacturer or a distributor as franchisor, including a written communication from a franchisor to a franchisee in which a duty is imposed on the franchisee, under which:

(A)    the franchisee is granted the right to sell and service new motor vehicles manufactured or distributed by the franchisor or only to service motor vehicles under the contract and a manufacturer's warranty;
(B)    the franchisee is a component of the franchisor's distribution system as an independent business;
(C)    the franchisee is substantially associated with the franchisor's trademark, tradename, and commercial symbol;
(D)    the franchisee's business substantially relies on the franchisor for a continued supply of motor vehicles, parts, and accessories; or
(E)    any right, duty, or obligation granted or imposed by this chapter is affected.

(16)    "Franchised dealer" means a person who:

(A)    holds a franchised motor vehicle dealer's license issued by the board under this chapter and Chapter 503, Transportation Code; and
(B)    is engaged in the business of buying, selling, or exchanging new motor vehicles and servicing or repairing motor vehicles under a manufacturer's warranty at an established and permanent place of business under a franchise in effect with a manufacturer or distributor.

(17)    "General distinguishing number" means a dealer license issued by the board under Chapter 503, Transportation Code.

4.    According to OCC Code 2301.252, a dealership that has not been licensed by the State of Texas CANNOT sell a New Vehicle. The Code is below:

Sec. 2301.252. LICENSE REQUIRED: SALE OF NEW MOTOR VEHICLES.

(a)    A person may not engage in the business of buying, selling, or exchanging new motor vehicles unless the person:

(1)    holds a franchised dealer's license issued under this chapter for the make of new motor vehicle being bought, sold, or exchanged; or

2

(2)    is a bona fide employee of the holder of a franchised dealer's license.

5.    Neither RAM nor Reagor-Dykes Imports holds a Franchise License that allows either entity to sell New Chrysler, Dodge, Jeep or Ram vehicles.  This is why in all the transactions conducted with these entities, RAM and Reagor-Dykes Imports were serving as Lease Facilitators, defined by the OCC Code as follows:

(35)    "Vehicle lease facilitator" means a person, other than a franchised dealer, a vehicle lessor, or a bona fide employee of a franchised dealer or vehicle lessor, who:

(A)    holds the person out to any other person as a "motor vehicle leasing company" or "motor vehicle leasing agent," or uses a similar title, to solicit or procure another person to enter into an agreement to become the lessee of a motor vehicle that is not, and will not be, titled in the name of or registered to the facilitator;

(B)    otherwise solicits another person to enter into an agreement to become a lessee of a motor vehicle that is not, and will not be, titled in the name of or registered to the facilitator;  or

(C)    is otherwise engaged in the business of securing lessees or prospective lessees of a motor vehicle that is not, and will not be, titled in the name of or registered to the facilitator.

6.    Reagor entities ARE NOT consignees, they are LEASE FACILITATORS, as shown on the licenses attached as Exhibit A to this Affidavit.

7.    The "consignment agreement" described by MUSA does not comply with the Texas Administrative Code, for instance, 43 TAC § 215.144(h), which states:

"(h) Consignment sales. A dealer offering a vehicle for sale by consignment shall have a written consignment agreement or a power of attorney for the vehicle, and shall, after the sale of the vehicle, take assignment of the vehicle in the dealer's name and, pursuant to subsection (f), apply in the name of the purchaser for transfer of title and registration, if the vehicle is to be registered, with the appropriate county tax assessor-collector as selected by the purchaser. The dealer must, for a minimum of 48 months, maintain a record of each vehicle offered for sale by consignment, including the VIN and the name of the owner of the vehicle offered for sale by consignment."

NMOT, during it entire course of business with the Reagor entities, never signed any type of consignment agreement.   In addition, the TxDMV Motor Vehicle Dealer Manual states the following record requirements for consignment sales transactions:

**4.3  Consignment Sales**.   The  following  records  for  consignment  sales transactions should be kept.

1.   A written consignment agreement for the vehicle or a power of attorney covering the vehicle.   A written consignment agreement should be completed by the licensed dealer (Reagor) and made a part of the sales file.

2.   A copy of the title should be at the dealer's licensed location (on Reagor's premises) for inspection by buyer or a TxDMV representative.  It is recommended that the copy of the title be attached to the consignment agreement.

3.   Record-keeping requirements for the actual sale of a consignment vehicle are the same as those of a retail sale.

Titles/MSO's [Manufacturers Certificate of Origin] were never delivered to Reagor to hold on its premises.   After the sale of the vehicle, Reagor never assigned the vehicle into its name, and never applied for title in the name of the purchaser, as required by 43 TAC 215.144(h).

Melinda Wolf

Subscribed and sworn to before me this 3rd day of April, 2019.

Notary Public, State of Texas

MONICA CASTILLO
My Notary ID # 128590906
Expires April 20, 2023

4



**MOTOR VEHICLE DIVISION**

# MOTOR VEHICLE LEASE FACILITATOR

**LICENSE NO:** FT108085

REAGOR AUTO MALL LTD
Prime Capital Auto Lease,
1301 19th St,
Lubbock, Texas, Lubbock, 79401-4936

**EXPIRES:** 04-30-2019
**PHYSICAL LOCATION:**
1301 19th St,
Lubbock, Texas, Lubbock, 79401-4936

**THE PERSON NAMED ABOVE IS LICENSED AS A MOTOR VEHICLE LEASE FACILITATOR**

HAVING SATISFIED THE APPLICABLE REQUIREMENTS OF CHAPTER 2301 OF THE TEXAS OCCUPATIONS CODE, CHAPTER 503 OF THE TEXAS TRANSPORTATION CODE, AND THE RULES OF THE BOARD, THE PERSON NAMED ABOVE IS HEREBY LICENSED WITH THE TEXAS DEPARTMENT OF MOTOR VEHICLES, MOTOR VEHICLE DIVISION.



*Daniel Avitia*

**Daniel Avitia, Director**
**Texas Department of Motor Vehicles**
**Motor Vehicle Division**

WARNING: PENAL CODE SECTION 37.10, PROVIDES THAT TAMPERING WITH A GOVERNMENTAL RECORD IS AN OFFENSE PUNISHABLE AS A SECOND-DEGREE FELONY.



**MOTOR VEHICLE DIVISION**

# MOTOR VEHICLE LEASE FACILITATOR

**LICENSE NO:** FT122912

REAGOR-DYKES IMPORTS, L.P.
REAGOR-DYKES MITSUBISHI,
6540 82nd St.,
Lubbock, Texas, Lubbock, 79424

**EXPIRES:** 10-31-2019
**PHYSICAL  LOCATION:**
6540 82nd Street,
Lubbock, Texas, Lubbock, 79424

**THE PERSON NAMED ABOVE IS LICENSED AS A MOTOR VEHICLE LEASE FACILITATOR**

HAVING SATISFIED THE APPLICABLE REQUIREMENTS OF CHAPTER 2301 OF THE TEXAS OCCUPATIONS CODE, CHAPTER 503 OF THE TEXAS TRANSPORTATION CODE, AND THE RULES OF THE BOARD, THE PERSON NAMED ABOVE IS HEREBY LICENSED WITH THE TEXAS DEPARTMENT OF MOTOR VEHICLES, MOTOR VEHICLE DIVISION.



**Daniel Avitia, Director**
**Texas Department of Motor Vehicles**
**Motor Vehicle Division**

WARNING: PENAL CODE SECTION 37.10, PROVIDES THAT TAMPERING WITH A GOVERNMENTAL RECORD IS AN OFFENSE PUNISHABLE AS A SECOND-DEGREE FELONY.